FRANCIS CARPENTER *vs.* GRAND TRUNK RAILWAY COMPANY.

Oxford.    Opinion June 27, 1881.

*Stat. 1871, c. 223.    Railroad ticket.    Limitations.*

The stat. 1871, c. 223, which declares that the holder of a railroad ticket shall have the right to stop over at any of the stations along the line of the road, and that his ticket shall be good for a passage for six years from the time it is first used, applies only to transportation within the territorial limits of this State; the statute has no force beyond the limits of the State, and consequently does not apply to a ticket from Portland to Montreal, while the ticket is being used beyond the limits of the State.

While such a ticket is being used in New Hampshire, Vermont, or Canada, the rights of the passenger will be governed and controlled by the laws of those places and not by the laws of Maine, but in the absence of proof to the contrary, the law of those places will be presumed to be the same as the common law of Maine, and not the same as the statute above cited.

ON EXCEPTIONS and motion for new trial.

Case for forcibly ejecting the plaintiff from the cars of the defendant at Compton in Canada on the 30th day of March, 1875, while he was riding upon a ticket purchased of the defendant at Portland, on the day of its date, which read as follows :

"GRAND TRUNK RAILWAY.

☞ Good only for continuous trip within two days from date.

Mch. 3, '75.    7101

Portland
to
Montreal.

Second-class."

The opinion states the case presented to the law court.

*Geo. A. Wilson*, for the plaintiff.

The only question in this case not settled by *Dryden* v. *Grand Trunk Ry. Co.* 60 Maine, 512, arises from the fact that the expulsion from the cars in this case occurred in Canada instead of in this State.

The contract was made in Portland, it was valid and must be governed by the laws of this State regulating such contracts. 2 Kent Com. 454, 462. The contract was made here in accordance with the laws of this State. There was a breach of this contract on the part of the defendant; for this breach action is brought to the bar of this court, and there is no principle of law or justice that can be invoked to exonerate the company from its liability voluntarily incurred.

*J. and E. M. Rand,* for the defendant, cited : *Paul* v. *Virginia,* 8 Wall. 168 ; *Henderson* v. *Mayor, N. Y.* 92 U. S. 259 ; *LeForest* v. *Tolman,* 117 Mass. 109 ; *Milwaukee R. Co.* v. *Armes,* 91 U. S. 489.

WALTON, J. The plaintiff claims to recover damages for having been, as he says, wrongfully ejected from the defendants' cars. The facts, briefly stated, are these :

The plaintiff purchased a ticket of the Grand Trunk Railway Company, of Canada, entitling him to a passage from Portland to Montreal. The ticket had these words printed upon it : "*Good only for continuous trip within two days from date.*" The ticket was dated March 3, 1875. It was purchased at the company's office in Portland. The plaintiff started on his journey, and having stopped over at various places along the route, reached Coatacook in Canada several days before March 30, 1875. On that day he took the train for Montreal, but the conductor refused to allow him to ride on the ticket of March 3, 1875, and forcibly ejected him from the cars. For this act he commenced an action against the company in this State, and has obtained a verdict for two hundred dollars damages. The defendants claim a new trial upon the ground that the rulings of the presiding judge were erroneous.

A statute of this State (Act 1871, c. 223) declares that the holder of a railroad ticket shall have the right to stop over at any of the stations along the line of the road, and that his ticket shall be good for a passage for six years from the time it is first used. The presiding judge ruled that if the plaintiff was put off the train for no other reason than because he was traveling

on the 30th of March on a ticket dated on the 3d of the same month (there being no evidence in the case of any local law or statute of Canada in conflict with the law of Maine) the defendants would be liable. The question is whether this ruling can be sustained. We think it cannot. The act of 1871 applies only to transportation within the territorial limits of this State, and cannot be applied to an entire passage from Portland to Montreal. To hold otherwise would render the act unconstitutional. *Hall* v. *DeCuir*, 95 U. S. 485. In that case the courts of Louisiana had construed a statute of that State, intended to secure equality of rights to colored passengers, as applicable to the entire voyage of a steamboat carrying passengers from New Orleans, in the State of Louisiana, to Vicksburg, in the State of Mississippi; and, because of this construction, which gave an extra territorial force to the statute, the federal Supreme Court held the act unconstitutional, as an attempt to regulate inter-State commerce, in violation of that article of the federal constitution which confers that power upon congress. There is nothing in the decision to indicate that the constitutionality of the act would not have been sustained, if the State courts had held that it applied only to transportation within the State of Louisiana. It is clear, therefore, that we cannot give our statute extra territorial force without rendering it unconstitutional, unless there is a distinction between a voyage by water upon the Mississippi river, and a passage by land over the Grand Trunk Railroad; and it is the opinion of the court that no such distinction can be maintained.

This brings us to the inquiry whether the ruling at the trial can be sustained upon the ground that there was no evidence of what the law of Canada was. We think not. Undoubtedly the case was to be tried in accordance with the law of this State, in the absence of proof of any other law. "It is a well settled rule," say the court of appeals of New York, "founded on reason and authority, that the *lex fori*, or, in other words, the laws of the country to whose courts a party appeals for redress, furnish in all cases, *prima facie*, the rule of decision; and if either party wants the benefit of a different rule or law (as, for instance, the

*lex domicilii, lex loci contractus,* or *lex loci rei sitœ*), he must aver and prove it; the courts of a country are presumed to be acquainted with their own laws, but those of other countries are to be averred and proved, like other facts of which courts do not take judicial notice." *Monroe* v. *Douglass,* 5 N. Y. 447. And the rule is similarly stated in a recent English case : "A party who relies upon a right, or an exemption, by foreign law, is bound to bring such law properly before the court, and to establish it in proof; otherwise the court (not being entitled to notice such law without judicial proof), must proceed according to the law of England." *Lloyd* v. *Guibert,* L. R. 1 Q. B. 115–129. It is often said that in the absence of proof to the contrary the court will presume the foreign law to be the same as the domestic law. But we think the above is the better way of stating the rule. The result is the same.

The judge who presided at the trial was therefore right in the assumption that the law of Maine was to furnish the rule of decision, the law of Canada not having been proved; but we think he was wrong in the assumption that it must be the statute of 1871 instead of the common law of the State. Holding, as we do, that the statute of 1871 is applicable only to transportation within the State—that it abrogates the common law only to that extent—we think a contract for the sale of a ticket may lawfully be made here, and may lawfully place a limitation upon the time within which it shall be used, other than that stated in the statute, if it is to be used in some other State or country ; and that such limitation will be, *prima facie,* binding upon the purchaser; and that he can only avoid the *prima facie* effect of such limitation by showing that the law of the place where it was to be used did not permit it. In other words, we hold that the common law is still in force here with respect to such contracts ; that is, with respect to contracts or tickets for transportation in other states or countries. For instance, the plaintiff's ticket entitled him to a passage from Portland to Montreal. It had this limitation printed upon it : "Good only for continuous trip within two days from date." While using it within this State the limitation would be inoperative by force of the statute of 1871.

Within this State he could stop over and resume his journey at any time within six years. But while using it in New Hampshire, Vermont, or Canada, the limitation would be, *prima facie,* valid; and he could only avoid this *prima facie* presumption, by showing that by the law of these places the limitation was not valid. The burden of proof, to show the existence of such a law would be upon him, not upon the railroad company to show its non-existence. The fact, however, should not be overlooked that by availing himself of his right to stop over in this State, the holder of such a ticket would break the continuity of his journey, and thus, perhaps, forfeit his right to ride further upon it, when he should reach the line of the State. But that is a matter to be thought of when purchasing or accepting such a ticket.

By what law a carrier's contract is to be governed, when it stipulates for transportation of freight or passengers through more than one State or country, and the laws of these States or countries are not the same, is a problem not easily solved. The authorities are confused and conflicting. The more recent decisions will be found cited and commented upon in the second edition of Wharton's Conflict of Laws, § § 471–481, inclusive. We do not find it necessary to discuss the question, because, at the trial of this cause, no such conflict was shown to exist, and the question is not properly before us.

*Exceptions sustained.*
*New trial granted.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.