*T. A. Rucker* and *B. E. Shear*, attorneys for appellants.

[No brief filed for appellee.]

---

## GLASS-PENDERY CON. MINING CO. *v.* MEYER MINING COMPANY.

(*Supreme Court of Colorado, December 4, 1883—Appeal from the District Court of Lake County*).

1. AWARD—IRREGULARITIES IN. The well settled rule of law relating to all irregularities in the proceedings of arbitrators, which are not jurisdictional, is, that an objection to be availing must be seasonably made. If a party, knowing of an irregularity, in order to avail himself of all chances of an award in his favor, remains silent, and permits the investigation to proceed, and money to be expended, etc., he will not afterwards be heard to question the validity of an unfavorable award, on the ground of such irregularity.

2. SAME—WHAT IRREGULARITIES ARE JURISDICTIONAL. Under the statute the failure of one of a board of arbitrators to attend a meeting, when no final action was taken, is a mere irregularity, and not jurisdictional—*provided*, he was present when final action was taken, and no prejudice to the unsuccessful party resulted from such absence from the meeting.

BECK, C. J. The two mining companies which constitute the parties appellant and appellee to this appeal were, in the

month of December, A. D. 1880, the respective owners of adjoining mining claims in Lake county. The appellee, being the owner of the Ætna mine, complained that the appellant company had by its agents and servants, crossed the boundary line and committed various trespasses upon its property, including the running of divers drifts, levels and other developments, and the extraction of valuable ores and mineral bearing substances. It was finally agreed to submit the whole controversy to the decision of five certain individuals, as arbitrators, and in pursuance of this agreement articles of submission were entered into on the 8th day of December, 1880, the respective corporations· binding themselves to abide by the award that should be made by the arbitrators, or any three or more of them, *provided* the award was in writing and ready to be filed with the clerk of the District Court of Lake county, on or before the first day of January, 1881.

The arbitrators agreed upon duly qualified, investigated the subject of dispute, and on the 29th day of December made their award in writing, in favor of the appellee. It was filed with the clerk of the District Court on the same day. All the arbitrators signed the award, although one of them, Nelson Hallock, dissented from the conclusion arrived at by his associates.

Afterwards, on the 3d day of January, 1881, the appellant filed a motion to vacate the award, assigning as grounds of the motion certain acts and omissions of the arbitrators pending the investigation.

The District Court denied the motion and entered judgment upon the award. The appellant then filed a motion to set aside the judgment, which was also denied.

Exceptions were reserved to these rulings, and it is now assigned for error that the District Court erred in refusing to set aside the judgment, and in refusing to vacate the award.

We learn from the record that the arbitrators had three meetings. The first meeting was at the Ætna mine, which they visited for the purpose of personally inspecting its workings. The second meeting was held for the purpose of hearing testimony; and the third and last meeting was to hear further testimony, and to deliberate upon and make their award.

The first ground assigned, in the motion to vacate the award,

is, that the arbitrators did not all meet or act together during the investigation of the matters submitted to them.

The specific objections urged under this head are, that Henderson, one of the arbitrators, did not attend the meeting at the mine, and that Hallock, another arbitrator, did not attend the second meeting, at which most of the testimony was heard and taken.

The appellant supported the objections by affidavit, but the conceded facts concerning the same are embodied in a stipulation signed by the counsel of the respective parties, which is inserted in the bill of exceptions.

Referring to the objection that Henderson failed to attend the meeting at the mine, it is proper to consider the object of that meeting, and the action taken thereat. The arbitrators say that they considered it a necessary part of the investigation which they were required to make in the case; but the record shows that no witnesses were examined at this meeting; that no measurements were taken and no rulings made. Its object appears to have been to afford the arbitrators an opportunity to personally inspect the mine and its workings, so as to enable them to comprehend the testimony to be introduced, and the more intelligently to investigate the controversy.

Although Henderson did not visit the mine at the same time the others did, he afterward, and before the award, visited it in company with one of the other arbitrators, and made the same personal inspection which the others had previously made. He also attended the second and third meetings; was present when all the witnesses were examined, and participated in all the deliberations of the board.

In view of the facts we do not think that the failure of Henderson to meet all his associates at the mine vitiated the award. Merely inspecting the subject matter of a controversy, without taking testimony or deciding points involved in the litigation, does not constitute a hearing. Such a meeting does not necessarily require the joint action of all the members of a commission, as do meetings at which testimony is to be heard, or consultation is to be had and rulings made.

A more serious question is presented by the objection that arbitrator Hallock did not attend the second meeting, at which the greater portion of the testimony was heard and taken.

This was a meeting which all the arbitrators were required to attend by an express provision of the statute then in force. The provision was:

"*All the arbitrators shall meet and act together during the investigation; but when met a majority may determine any question.*" (Code of Civil Procedure, 1877, Sec. 283.) The absence of Hallock from the meeting was clearly an irregularity, but whether it was fatal to the validity of the award depends upon whether it was such an irregularity as could be waived by the parties. The stipulation of counsel shows that the appellant was present and knew of Hallock's absence. It is not pretended that any objection was made to proceeding with the hearing without him, as he had requested should be done when notified to be present.

The simple inquiry, therefore, is, whether under these circumstances the absence of the arbitrator could be waived by the parties.

The well settled rule of law relating to all irregularities in the proceedings of arbitrators, which are not jurisdictional, is, that an objection, to be availing, must be seasonably made; that if a party, knowing of an irregularity in the proceedings, in order to avail himself of all chances of an award in his favor, remains silent and permits the investigation to proceed, and money to be expended, and the time of all concerned to be consumed for the purpose, he will not afterwards be heard to question the validity of an award that is unfavorable to him. His silence will be construed into consent that the proceedings continue without objection, notwithstanding the error; for had an objection been interposed before the award was made, the irregularity might have been corrected. Neither legal nor moral considerations, therefore, entitle him to raise the objection afterwards: Morse on Arbitration and Award, p. 171; *Maynard* v. *Frederick*, 7 Cush., 250; Broom's Legal Maxims, *137.

The point to be determined in this connection is, whether the irregularity complained of is jurisdictional; for it is an elementary principle that consent cannot confer jurisdiction. A void proceeding is a nullity, and the defects which make it void are incapable of being waived. Mr. Sedgwick says: "So it is well settled that not even the most formal and solemn

consent can give jurisdiction to a Court not authorized to take it. And whenever the objection is raised, although it may be a breach of faith and good morals to insist upon it, still it will be fatal." Sedgwick Stat. and Const. Law, p. 87.

Accordingly, this Court held in *Haverly Invincible Mining Co.* v. *Howcut*, 4 COLO. LAW REPORTER, 62, that parties to a litigation could not, by agreement, confer jurisdiction to try a cause upon one not a judicial officer authorized by law to hold the Court. See, also, *Derry* v. *Ross et al.*, 5 Colo., 295.

That many statutory provisions relating to judicial proceedings may be waived by the litigants, and that the waiver may be either express or implied, is beyond controversy. That other provisions cannot be waived, is equally well established.

A provision which, if insisted on, would enure to the benefit of a party, not involving principles of public policy, may be waived, and its non-observance will not invalidate the result of the proceeding. But where the requirement is a prerequisite to jurisdiction, or where the purpose of the enactment is to secure general objects of public policy or morals, its observance cannot be dispensed with by consent of parties. Sedgwick Stat. and Const. Law, pp. 87, 359; *Selleck* v. *Sugar Hollow T. Co.*, 13 Con., 452; *Ives* v. *Finch*, 22 *Id.*, 101; *Florence, etc., R. Co.* v. *Ward*, S. C. Kansas, Feb., 1883; *Abbott* v. *Dexter*, 6 Cush., 108.

It sometimes becomes a difficult question to determine whether a statutory requirement is a prerequisite to jurisdiction or not. An illustration of the difficulty is furnished by the contrariety of judicial opinion upon the usual statutory provision, that arbitrators shall be sworn before proceeding to hear any testimony. Courts which have held that the oath may be waived, base their ruling upon the proposition, that the taking of the oath is not a prerequisite to jurisdiction, while those of opinion that the oath may *not* be waived, hold that it *is* a prerequisite to jurisdiction. Among the cases taking the former view are, *Howard* v. *Sexton*, 4 Comst., 157; *Browning* v. *Wheeler*, 24 Wend., 257; *Woodrow* v. *O'Connor*, 28 Vt., 776; *Tucker* v. *Allen*, 47 Mo., 488.

In the following cases the contrary view is presented: *Inslee* v. *Flggg*, 26 N. J. Law, 368; *Overton* v. *Alpha*, 13 La. An., 558; *Combs* v. *Little*, 3 Green Ch., 310; *Hepburn* v. *Jones*, 4 Colo., 98.

We are of opinion that the failure of Hallock to attend the meeting referred to, was not jurisdictional.

It follows, therefore, that the error complained of was an irregularity, and might be waived by the parties; also, that inasmuch as the stipulation shows that the appellant was present at the meeting in question, and knew of the absence of the arbitrator, but interposed no objection to proceeding without him, that the objection made after the award was made and filed, came too late.

The appellant does not appear to have been in any manner prejudiced by the irregularity complained of. All the testimony produced at the meeting was written down by a stenographer, and afterwards transcribed by him. The transcript was submitted to Hallock, and read and examined by him, without objection, at the final meeting.

All the arbitrators were present at the last meeting, and all, with the whole evidence before them, consulted and deliberated together concerning their award. The objection cannot be sustained. *White* v. *Robinson*, 60 Ill., 499; *Akridge* v. *Patillo*, 44 Ga., 585.

The point raised that the arbitrators made no examination of the books of the Glass-Pendery Company, as required by the articles of submission, is wholly without merit. The stipulation of counsel shows that the appellant did not produce the books for examination, and further, that a complete statement of all the books contained, pertinent to the case, was, by consent of the appellant, furnished to and used by the arbitrators instead of the books.

The oral objection urged· on hearing of the motion below, that the arbitrators refused to allow one Joseph Uhl to be examined as a witness before them on the part of the appellant, cannot be sustained in the form presented by the record. The request to examine Uhl as a witness does not appear to have been made by an officer, or stockholder of the company, nor by a person authorized to make it. It was made by the foreman of the Glass-Pendery mine, whose position indicates simply an employee in the mine. Nor is it shown what facts the proposed witness could have testified to, without which we cannot say that the testimony would have been material or pertinent.

In the present state of the record it does not appear that the arbitrators refused to receive testimony pertinent to the controversy, which was offered by one of the parties thereto; or that they rejected competent testimony upon a point that needed to be proved; nor is it shown that they omitted to pass upon any matters included in the submission.

Upon the whole record we discover no evidence of misconduct upon the part of the arbitrators, and no evidence that any action taken by them was prejudicial to the rights of the appellant. Every step in their proceedings appears to have been taken with the knowledge and express or implied consent of the appellant, and no objections to their proceedings were made until the award was made and found to be in favor of the appellee.

The motion to vacate the award was properly denied, and the same grounds being urged upon the motion to set aside the judgment, it, too, was properly denied.

*The judgment is affirmed.*

*William Harrison,* for appellant.

*J. B. Bissell,* for appellee.