## STATE OF VERMONT v. FRANK MORRILL.

JANUARY TERM, 1896.

*Presumption as to law of other country. Bringing into this state a fresh larceny.*

1. It will be presumed that all civilized countries recognize and enforce certain fundamental principles, and to this extent that their laws are like our own. So held as to larceny.

2. The rule that one who steals property in a foreign country and brings it into this state, may be punished here as for a fresh larceny, discussed and affirmed.

3. In this respect there is no difference between a sister state and a foreign country.

Indictment for larceny. Plea, not guilty. Trial by jury at the September term, START, J., presiding. Verdict, guilty. The respondent excepts.

*Cook & Redmond* for the respondent.

No felonious intent at the time of the taking was shown, and without this there can be no larceny. *Bullard* v. *State*, 30 Tex. 367; *Wilson* v. *People*, 30 N. Y. 459; *Cunning-*

*ham* v. *State*, 27 Tex. App. 479; *People* v. *Cal.*, 43 Am. Dec. 655; *Regina* v. *Cole*, 2 Cox C. C. 340; *Regina* v. *Thristle*, 3 Cox C. C. 573; *Rex* v. *Charlewood*, 1 Leach 409; *Rex* v. *Banks*, Russ. & R. 441; *Bailey* v. *State*, 58 Ala. 414; *Umphry* v. *State*, 66 Ind. 223; *State* v. *Wood*, 46 Ia. 116; *State* v. *Conway*, 18 Mo. 321; *State* v. *Clifford*, 14 Nev. 72; *Wilson* v. *People*, 39 N. Y. 459; *People* v. *Anderson*, 15 Johns. 294; *Commonwealth* v. *Smith*, 1 Penn. 34; *Reed* v. *State*, 8 Tex. App. 40; *Morrison* v. *State*, 17 Tex. App. 34; *Hill* v. *State*, 57 Wis. 377.

The bringing of stolen property into this state is not a larceny. 3 Inst. 113, 1 Hawk. c. 3, sec. 52; *Rex* v. *Anderson*, 2 East. P. C. 772; *Rex* v. *Prowes*, 1 Mood. C. C. 349; Shaw, C. J., in *Commonwealth* v. *Uprichard*, 3 Gray 434; *State* v. *Cummings*, 33 Conn. 260; *State* v. *Brown*, 1 Hay. 1; *People* v. *Loughridge*, 1 Neb. 11; *Lee* v. *State*, 64 Ga. 203; *State* v. *Branch*, 2 Vroom. 82; *State* v. *Newman*, 9 Nev. 48; *Simmons* v. *Commonwealth*, 5 Bing. 617; *Beal* v. *State*, 15 Ind. 378; *State* v. *Bennett*, 14 Ia. 479; *People* v. *Gardner*, 2 Johns. 477; *State* v. *Reounals*, 14 La. Ann. 278; *Simpson* v. *State*, 4 Humph. 456, 459; *Stanley* v. *State*, 24 Ohio 166.

*O. S. Annis* for the state.

The court might presume that the law of Canada was like our own. *Woodrow* v. *O'Connor*, 28 Vt. 776.

The bringing of the stolen goods into this state was a fresh larceny. *State* v. *Bartlett*, 11 Vt. 650; *State* v. *Newman*, 9 Nev. 48; *Worthington* v. *State*, 58 Md. 403; Whart. Crim. Ev., 8th ed., s. 111; Whart. Crim. Law, s. 291.

ROWELL, J.   Indictment for the larceny of a horse, a wagon, and a harness.   The testimony on the part of the

state tended to show that the prisoner hired the team of the
owner in Canada, to drive from a certain place therein to a
certain other place therein and return the next day; that he
did not return at all, but drove through and beyond his des-
tination and into Orleans county in this state, where he tried
to sell the team; and that when he thus obtained possession
of it in Canada he intended to steal it. There was no proof
as to the law of Canada, and the prisoner moved for a ver-
dict of acquittal, for that there was no such proof, and for
that he could not be convicted of larceny in this state if all
was true that the testimony tended to show. The motion
was overruled and the prisoner excepted. Verdict of guilty.
Although courts do not, without proof, take notice of foreign
laws, yet they will assume that certain general principles,
consonant to reason and natural justice and of universal ap-
plicability, are recognized by all civilized nations; as, for
instance, the right of self preservation, the privileges and
exemptions of necessity, the common duties of humanity, of
more or less perfect obligation, and those obligations, for the
most part conventional, upon which is based the modern
system of international law. Thus, the right to immunity
from personal restraint and personal violence is such a nat-
ural right and so generally recognized that he who sues for
false imprisonment or assault and battery in another coun-
try need not in the first instance prove that the act com-
plained of was unlawful where committed; it will be pre-
sumed to have been unlawful there, and to have imposed
liability for damages; or, to speak more exactly, in the ab-
sence of such proof, the court will proceed according to the
law of the forum. *Lloyd* v. *Guibert*, L. R. 1 Q. B. 115,
129; *Carpenter* v. *Grand Trunk Railway Co.*, 72 Me.
388. Wharton says that with regard to what may be called
processual presumption, of which the presumption that a
foreign law is the same as the domestic is one, no doubt
the *lex fori* decides. Conflict of Laws, s. 782. But whether

you say that in the absence of proof the court will presume the foreign law to be like the domestic law, or say that the court will proceed according to the domestic law, makes no difference with the rule, for it is the same ·in effect either way. In *Langdon* v. *Young*, 33 Vt. 136, Redfield, C. J., says it is proper to assume that flagrant violations of the fundamental principles of moral obligations, such as theft and murder, are regarded as crimes by all Christian nations, and that unjustly to accuse abroad one of such deeds as there committed, is actionable. In *Woodrow* v. *O'Connor*, 28 Vt. 776, this court assumed, in the absence of proof, that there was no difference between our law and the law of Canada in respect of the validity of arbitration notes.

So in the case at bar, the court might well assume, as it did, that there was no difference between our law and the law of Canada in respect of larceny in the circumstances disclosed, and proceed according to our law.

For a hundred years our courts have held the common law to be, that one who steals property in another country and brings it into this state is guilty of larceny here. The same is true of one who steals in another one of the United States and brings the property here. The first reported case in respect of stealing in Canada is *State* v. *Bartlett*, 11 Vt. 650, decided in 1839. It was there said that the rule had been too long settled, and recognized by too long and uniform a course of practice and decision, to be changed except by legislative action. That was fifty-seven years ago. The rule has not been changed by legislative action, although the attention of the legislature was then specifically directed to the matter, and hence it is fair to infer that the legislature has been satisfied with the rule. If it was too late then for the court to change the rule, it is certainly too late now. Nor can it be changed except for reasons that would equally call for its abrogation in cases of property stolen in another state of the Union and

brought here, for the states are as independent of one another in respect of their jurisdiction as they are of foreign countries. Two states, Massachusetts and Ohio, have attempted to distinguish between the thief who brings therein property stolen by him in another state, and the thief who does the like with property stolen by him in another country, convicting the one and acquitting the other. *Commonwealth* v. *Uprichard*, 3 Gray 434; *Stanley* v. *State*, 24 Ohio St. 166; 15 Am. Rep. 604. But we think no such distinction can be made, and that both cases stand on precisely the same ground. We could not, therefore, abrogate the rule as to one without abrogating it as to both, which we are by no means prepared to do. We are satisfied with the rule as matter of policy, as was the court in *State* v. *Bartlett*; for our law should not be such as to induce thieves to come here with their plunder. We are satisfied with it on principle, for every asportation is a fresh trespass and a fresh taking, and so, as matter of law, you have a felonious taking and carrying away in this state, since the possession, as well as the title of the property, is deemed to continue in the owner notwithstanding the original taking, as that was felonious. It is upon this precise ground that in England one who steals goods in one county and carries them into another, may be indicted for larceny in the latter, though he can be indicted for robbery only in the county where the force or putting in fear was. It is true they do not extend the rule to cases where the property was stolen abroad; but the principle of the rule is logically capable of such extension, and, in effect, it receives such extension in this country when a thief is convicted of larceny in one state for bringing in goods that he stole in another state, which the states very generally do, though some do not. On this ground it is that one who steals my goods from one who had stolen them, may be indicted as having stolen them from me. Ohio denies the principle altogether, and says that a

mere change of place by the thief while he continues in the uninterrupted and exclusive possession of the stolen property does not constitute a new taking, either in law or in fact, and yet she convicts of larceny the thief who brings goods into the state that he stole in another state, but upon what ground is not obvious.

Larceny of the same goods by the same person may be committed any number of times; and this offence, like every other, is punishable in the jurisdiction in which it is committed. We cannot punish for offences against a foreign law, but only for offences against our law. But a man cannot bar prosecution for a criminal act here on the ground that he committed a like act elsewhere. A man can neither be punished nor escape punishment here because he stole the same goods in another state or country. 1 Bish. Crim. Law, s. 137, 7th ed.

This question is so fully discussed in the cases, and the reason for the different holdings so fully stated, that further discussion here is unnecessary. We may say, however, that Maine holds with us on the question here involved. *State* v. *Underwood*, 49 Me. 181 ; 77 Am. Dec. 254.

*Judgment that there is no error in the proceedings of the county court, and that the respondent take nothing by his exceptions.*